UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TY-RON STEVEN ANDERSON,

                  Petitioner,               Case No. 2:18-cv-11690
                                              Hon. George Caram Steeh

    v.

MIKE BROWN,[1]

                  Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF
HABEAS CORPUS, (2) DENYING MOTION FOR EVIDENTIARY
HEARING, (3) DENYING CERTIFICATE OF APPEALABILITY,
AND (4) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

      Ty-Ron Steven Anderson filed this habeas case under 28 U.S.C. §

2254, challenging his Wayne Circuit Court jury trial conviction for first-

degree murder, MICH. COMP. LAWS § 750.316, felon in possession of a

firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during

the commission of a felony, MICH. COMP. LAWS § 750.227b.

      Anderson's initial habeas petition contained four claims, one of which

he did not present to the state courts on direct appeal. The court stayed the

petition, giving Anderson the choice of either deleting his unexhausted

---

[1]The Court substitutes Anderson's current Warden as the proper Respondent. *See
Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006).

claim or returning to state court to file for post-conviction review. (ECF No. 4.) Anderson chose to file for state post-conviction review. After he was denied relief by the state courts, Anderson returned here and filed an amended petition, a motion to reopen the case, and a motion to expand the record. (ECF Nos. 10, 11, and 12.) Having now exhausted his state court remedies, the court lifted the stay, denied the motion to expand the record without prejudice, and directed Respondent to file a responsive pleading and copies of the state court record. (ECF No. 14.) After Respondent filed its answer and the state records, (ECF Nos. 17 and 18), Anderson filed a motion for an evidentiary hearing which also serves as a reply brief. (ECF No. 19.) The case is now ready for decision.

Because the claims raised by Anderson in his initial and amended petitions are without merit, the court will deny habeas relief. The court will also deny Anderson's pending motion for evidentiary hearing, deny a certificate of appealability, and deny leave to appeal in forma pauperis.

## I.

The charges against Anderson involved allegations that he provided an assault rifle and dark hoodie for co-defendant Mosby, knowing that Mosby intended to shoot-up the home of his former girlfriend, Cochran. Anderson also agreed to meet and drive Mosby away from the scene after

the shooting. Cochran's eight-year-old son was shot and killed during the

incident. The Michigan Court of Appeals summarized the evidence

presented at trial:

> This appeal involves the murder of eight-year-old [J.P.], who lived at 682 East in an area known as the Brewster Projects. The prosecution's theory of the case was that Mosby became enraged after his ex-girlfriend, Samona Cochran, accused Mosby of breaking into her home. Mosby, accompanied by 16-year-old Devontae Starks, used a SKS rifle he received from Anderson to shoot at Cochran's home, killing [J.P.] as he slept in his bed in the early morning hours of July 30, 2014. The defendants were tried together before separate juries.
>
> Cochran testified that she stopped seeing Mosby in April 2014, three months before the shooting. At that time, Mosby told Cochran that if he "couldn't have me, nobody would." He had threatened to break out her windows and kill the people around her, causing her to file a police report. Cochran returned home from breakfast on July 29, 2014, to find that her home had been broken into. She called the police, who located her property under a nearby tree. When officers first arrived, Cochran did not name Mosby as a possible suspect. But Mosby called her, accusing her of telling the officers that he was responsible. While Cochran had not mentioned Mosby's name to police, she had discussed him as a possible suspect with her neighbors. After arguing with Mosby, Cochran went back out to where the officers were and specifically mentioned Mosby. Mosby left voicemails for Cochran that day. In one, he threatened to "blow your f*****' brains."
>
> Starks testified for the prosecution as part of a plea deal. He testified that Mosby was a neighborhood tattoo artist. The two of them had a "joint venture" whereby Starks would sell marijuana to Mosby's customers. Starks testified that he and a friend were responsible for breaking into Cochran's home. Starks's friend believed that Cochran had stolen some marijuana from him. The two men stole various items and left

3

them under a nearby tree. Starks ran into Mosby shortly after the robbery and heard Mosby angrily say that Cochran had accused him of the theft. Mosby threatened to kill Cochran. Two neighbors testified that Mosby said that he would kill Cochran and her son because she was accusing Mosby of breaking into her home. Starks did not tell Mosby that he was the person who broke into Cochran's home because he was afraid that Mosby would kill him.

Early in the afternoon of July 29, 2014, Starks and Mosby left the neighborhood so that Mosby could tattoo Starks's girlfriend's sister. Throughout the afternoon, Mosby remained angry. When Mosby and Starks returned to the neighborhood that evening, Mosby told Starks that the shooting of the house was about to go down. Anderson arrived in a black Jeep with a passenger. Anderson gave Mosby a dark hoodie and a semi-automatic rifle and agreed to meet Mosby and Starks after the shooting. Mosby and Starks went to the rear of Cochran's home where [J.P.] slept. Mosby aimed the gun at the building and Starks ran. Starks heard multiple gunshots.

After the shooting, Starks and Mosby ran to their prearranged location, where Anderson was waiting in his Jeep. Eventually, Anderson dropped off Mosby and Starks. Starks gave the gun to Anderson's passenger before he left. Mosby and Starks went to Starks's girlfriend's house, where Mosby threatened to kill Starks if he told anyone. Starks gave Mosby money for a bus ticket and a different shirt. Mosby and Starks later were arrested.

Police executed a search warrant at Anderson's house and found the SKS rifle that had been used to kill [J.P.] along with a magazine and bullets. Police technicians determined that Anderson was the seventh most frequent contact on Mosby's cell phone.

On the morning after the shooting, Mosby sent a text to Anderson, "News report 8-year-old boy shot." During his jail calls, Anderson indicated that "the juv," presumably Starks, would be testifying and said, "one of them n****s is telling." At

trial, the officer in charge testified that Starks' mother had been moved, as she had received threats from the person who had been the passenger in defendant's Jeep.

*People v. Anderson*, No. 327732 & 328134, 2016 WL 6667951 at \*1-2

(Mich. Ct. App. Nov. 10, 2016).

Following his conviction, Anderson filed a claim of appeal in the Michigan Court of Appeals. His brief on appeal filed by his appellate attorney the following claims:

I. The evidence was insufficient to find Mr. Anderson guilty beyond a reasonable doubt of first-degree premeditated murder, even given the prosecutor's theory that he aided or abetted Mr. Mosby, given the complete absence of evidence that Mr. Anderson knew what Mr. Mosby intended to do, let alone that he specifically intended the result of first-degree murder.

II. The prosecutor committed reversible error by misstating the law regarding the knowledge required of an aider or abetter and by several appeals for justice for 8-year-old [J.P.].

III. Mr. Anderson was denied the effective assistance of counsel under the standards set forth in *Strickland v. Washington* due to counsel's failure to ask that Sgt. Mackie's  9 direct examination be stricken and the jury told to disregard it because she could not adequately cross-examine him, her failure to object to evidence regarding threats against witness Devontae Starks' mother attributed not to Mr. Anderson but to a person who was affiliated only with him, her failure to object to the prosecutor's misstatements of law regarding aiding or abetting, and her failure to object to the prosecutor's appeals to the jurors for justice for [J.P.].

The Michigan Court of Appeals affirmed in an unpublished opinion. *Anderson,* 2016 WL 6667951. Anderson filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims and an additional allegation of ineffective assistance of counsel. The Michigan Supreme Court denied the application by standard form order *People v. Anderson*, 895 N.W. 525 (Mich. 2017)(Table).

As indicated above, after filing his initial federal habeas petition, the present case was stayed, and Anderson returned to the state trial court and filed a motion for relief from judgment. (ECF Nos. 18-14 and 18-17.) The motion raised multiple allegations of ineffective assistance of counsel. Anderson asserts that his counsel was ineffective for: (a) failing to move for an evidentiary hearing during his direct appeal, (b) failing to object to the trial court's answer to a jury question during deliberations, (c) failing to investigate and call Ron Sutton as a defense witness, (d) failing to retain an expert witness, and (e) failing to move to sever the case from Mosby.

The trial court initially denied the motion by order dated October 30, 2019, finding that the claim was barred by res judicata. Anderson appealed, and the Michigan Court of Appeals reversed and remanded because a motion for relief from judgment is governed by Michigan Court Rule 6.500

et seq. and res judicata does not apply to new claims raised in such proceedings. (ECF No. 18-19, PageID.17-4.)

On remand, by order dated May 3, 2021, the trial court again denied Anderson's motion for relief from judgment, denying the claims on the merits in addition to once again referring to res judicata. (ECF No. 18-15.) The court found that Anderson had not demonstrated that his counsel was ineffective or that he was prejudiced with respect to the new allegations of deficient performance. (*Id.*, PageID.2286-91.)

Anderson appealed, and the Court of Appeals affirmed, finding that "notwithstanding the fact that the trial court again erroneously held that res judicata precluded relief in this case, the trial court addressed the merits of defendant's claims and concluded that defendant had not established entitlement to relief. Defendant has not established that, in evaluating the merits of his claims, the trial court erred in denying the motion for relief from judgment." (ECF No. 18-20, PageID.2647.)

Anderson appealed this order, but the Michigan Supreme Court denied leave to appeal because "the defendant has failed to meet the burden of establishing entitlement to relief under Mich. C. R. 6.508(D)." (ECF No. 18-22, PageID.2917.)

As indicated, Anderson then filed his amended petition, raising four allegations of ineffective assistance of counsel. (ECF No. 13.) The court as well as Respondent interpret the amended petition to supplement rather than replace the original petition. Anderson thus raises four claims for relief in this action:

> I. Insufficient evidence was presented at trial to prove that Anderson possessed the requisite mental state for first-degree murder under an aiding and abetting theory.
>
> II. The prosecutor committed misconduct by misstating the law regarding the mental state for aiding and abetting and by attempting to elicit sympathy for the victim during closing argument.
>
> III. Anderson's counsel was ineffective for: (a) failing to move to strike the direct examination testimony of Officer Mackie, (b) failing to object to testimony that a prosecution witness threatened, (c) failing to object to the misconduct of the prosecutor at issue in Claim II, (d) failing to interview and call Sutton as a defense witness, (e) failing to object to the court's answer to a jury note, (f) failing to move to sever Anderson's trial from Mosby's, and (g) and appellate counsel was ineffective for failing to raise sub-claims (d)-(f) on direct appeal.
>
> IV. Anderson's appellate counsel was ineffective for failing to properly move for an evidentiary hearing during direct appeal.

II.

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas

8

petitioner must demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. *Id*. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

III.

A.

Anderson asserts in his first claim that constitutionally insufficient

evidence was presented at trial to establish that he possessed the

necessary mental state to be convicted under an aiding-and-abetting theory

of first-degree murder. After reciting the applicable constitutional standard

and the state-law requirements for aiding and abetting, the Michigan Court

of Appeals rejected the claim on the merits:

> The prosecution presented sufficient evidence to convict
> Anderson of first-degree murder. Anderson provided Mosby
> with the murder weapon and also provided transportation after
> the shooting. A reasonable jury could conclude that Anderson
> disregarded the likelihood that the natural tendency of his acts
> was to cause death. Clearly Anderson performed acts or gave
> encouragement that assisted Mosby in [J.P.]'s murder.

*Anderson*, 2016 WL 6667951 at *2-4.

In light of the evidence presented at Anderson's trial, this decision

reasonably applied the clearly established Supreme Court standard. The

standard asks "whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979). Habeas relief is warranted on a

sufficiency of the evidence claim only if the state court's application of this

standard was unreasonable. *See* 28 U.S.C. § 2254(d)(2). The court may

not "reweigh the evidence or redetermine the credibility of the witnesses"

because such an assessment "is generally beyond the scope of federal

habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*,

319 F.3d 780, 788 (6th Cir. 2003).

Under Michigan law, to obtain a conviction of first-degree

premeditated murder the prosecution must prove that the defendant

intentionally killed the victim and that the killing was premeditated and

deliberate. *People v. Anderson*, 209 Mich. App. 527, 537 (1995). To

support a finding under Michigan law that a defendant aided and abetted in

the commission of a crime, the prosecutor must prove that:

> 1. the crime charged was committed by the defendant or some
> other person;
>
> 2. the defendant performed acts or gave encouragement that
> assisted the commission of the crime; and
>
> 3. the defendant intended the commission of the crime or had
> knowledge that the principal intended its commission at the
> time he gave aid and encouragement.

*Riley v. Berghuis*, 481 F. 3d 315, 322 (6th Cir. 2007)(citing *People v.*

*Carines*, 460 Mich. 750, 757-58 (1999)).

There is also an alternative way for a prosecutor to satisfy the third

element. A defendant possesses the requisite mental state for aiding and

abetting where the criminal act committed by the principal is an "'incidental consequence[] which might reasonably be expected to result from the intended wrong.'" *People v. Robinson*, 475 Mich. 1, 9 (2006)(quoting Perkins, Criminal Law (3d ed.), pp. 741-43, 745). Thus, under an aiding-and-abetting theory, a defendant must possess the criminal intent to aid, abet, procure, or counsel the commission of an offense. Besides that offense, a defendant is also criminally liable for crimes that are the natural and probable consequences of the offense he intends to aid or abet. *Id.*, at 15. Moreover, an aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *People v. Turner*, 213 Mich. App. 558, 568-69 (1995).

Here, evidence was presented at trail indicating that Mosby told several people that he intended to murder Cochran and her son. He left a voicemail for Cochran that he'd "blow your fuckin' brains." Tr. 4-15-15, at 10. He told another witness that "he was gonna kill her and her son." Id. at 12. He told yet another witness that he was going to kill her and anyone else in her house. Id. at 14-15, 151. He told a third person he was "gonna kill this bitch." 4-16-15, at 14. The evidence also indicated that Mosby was

in contact with Anderson by phone and text message the day he made these threats and the day of the murder.

The evidence further indicated that Anderson brought Mosby the murder weapon, an assault rifle, and it was later found at Anderson's house. Anderson also had access to a less powerful handgun, but he leant Mosby the more powerful and penetrating assault rifle. He also provided Mosby with a dark colored hoodie to wear and a ride away from the scene after the shooting. Before the shooting, there was an exchange of text messages between Mosby and Anderson, with Anderson texting "Whatsup B," and Mosby replying, "We got problems." Mosby texted for Anderson to call him, and at some point he texted, "You left yet?" and Anderson answered, "Indeed." Tr. 4-17-15, at 111-112; Tr. 4-16-15, at 192-221; Tr. 4-21-15, at 104.

Anderson also made incriminating statements from jail. He told one witness that the "juv," which viewed most favorably to the prosecution was a reference to Starks, was going to testify against them. Tr. 4-21-15, at 118-20. He was also recorded telling his wife not to say anything to anyone and suggesting that as his wife, she could not be forced to testify against him. Id. at 123-124.

Taken together and viewed most favorably to the prosecution as the established Supreme Court standard directs, sufficient evidence was presented at trial to demonstrate beyond a reasonable doubt that Anderson had the requisite mental state to aid and abet Mosby in committing first-degree murder. Viewed most favorable to the prosecution, the evidence indicated that Mosby was not discrete about his intentions. He told multiple people that he was angry with Cochran and intended to kill her and her son. The evidence that Anderson provided him with a powerful assault rifle and dark hoodie after phone calls and text messages, and that he stayed in the area to give Mosby and Starks a ride from the scene after the shooting, constituted powerful circumstantial evidence that Mosby also told Anderson that he planned to shoot up Cochran's house. Given the evidence presented, a rational juror could find beyond a reasonable doubt that, at a minimum, Anderson knew that Mosby intended to shoot up Cochran's residence and that a natural and probable consequence of his actions was that someone would be shot to death. The rejection of the claim by the Michigan Court of Appeals was not unreasonable. Anderson fails to demonstrate entitlement to habeas relief with respect to this claim.

B

Anderson's second claim asserts that the prosecutor rendered his trial fundamentally unfair during closing argument by mischaracterizing the mental state required for an aiding and abetting theory and by attempting to elicit sympathy for the victim.

With respect to the first allegation regarding misstating the element, the Michigan Court of Appeals rejected the claim on the merits as follows:

… During closing arguments, the prosecutor argued:

Now, Mr. Anderson. Mr. Anderson's jury you're gonna get an instruction on aiding and abetting. Did Anderson assist Mr. Mosby in any way? You need to think about whether or not what Mr. Mosby did was first-degree murder or second-degree murder, because whatever Mr. Mosby did, is what Mr. Anderson did, if he helped Mr. Mosby do it, okay.

Now, this case I want you to look at this aiding and abetting instruction. Okay. Anyone who intentionally assists someone else who [sic] committing a crime is guilty as the person who directly commits it, and can be convicted of the crime as an aider and abetter. To prove this charge, we have to prove the following beyond a reasonable doubt.

First, that the alleged crime was actually committed, either by the defendant or someone else. It doesn't matter whether anyone else has been convicted of that crime. Second, that before or during the crime the defendant did something to assist in the commission of the crime. Okay, we have before and during in this case. We have Mr. Anderson speaking with Mr. Mosby as of noon that

day, remember that text? That text ["]we got problems["] that Mr. Mosby sends to Mr. Anderson.

This is around the same time that Mr. Mosby is walking around the neighborhood threatening to kill Samona and everybody else, threatening to kill Samona, threatening to kill Samona and her son. They continue to stay in contact and it's not until Mr. Anderson gets off work that he goes all the way back to his house in Warren and directly back down with the gun in this case, okay. So when we're talking about assisting, we're talking about providing the SKS assault rifle, providing that piece of clothing to cover up it [sic], and providing him with a ride.

Third, that the time the defendant must have intended the commission of the crime alleged, or must have known that the other person intended its commission, or that the crime alleged was a natural and probable consequence of the commission of the crime intended.

What does this mean? For the Anderson jury, whatever Mr. Mosby does in for a penny, in for a pound, Mr. Anderson is guilty of it. If Mr. Anderson, if you want to give him all the benefit of the doubt in the world, all the benefit of the doubt, and you think that he just provided a gun to Mr. Mosby to shoot up that house, what's the natural probable consequence of using an SKS assault rifle to shoot up a house? That somebody's gonna get hurt or killed.

So you've got to think about what Mr. Mosby intended. Whatever he intends transfers onto Mr. Anderson if he's helping him in anyway [sic]. But even if you wanna give him any kind of benefit of the doubt, there's this language that you have to consider also, the natural and probable consequences of Mr. Anderson's actions.

16

* * *

When you think about the intent in this case, this wasn't like Mr. Anderson just brought a rifle from around the block. It wasn't an easy feat. He actually had to drive many miles after communicating with Mr. Mosby to go get that rifle. And again, he had a choice. He could have brought the .9 millimeter, but he brought the SKS assault rifle. Why? Because that's what Mosby wanted him to do and he was more than happy to help.

What does an assault rifle do? Cuts through walls. Mr. Mosby complained all day about wanting to kill that bitch and her son. You think he didn't tell Mr. Anderson that? Why else would Mr. Anderson go get the assault rifle? He provided it to Mosby, he provided clothing to Mr. Mosby, and he provided the ride. He's an aider and abettor and he intended to help Mr. Mosby do what he went there to do that night.

Defense counsel took exception and argued to the jury that Anderson had no knowledge of what Mosby intended to do with the rifle:

But what is most important here is whether Mr. Anderson had knowledge of any intent to commit a crime, to commit a killing or a shooting at all, and I submit to you at the outset that that evidence is going to fail because it's not there. Excuse me.

Now, you also will be dealing with the felony firearm and felon in possession charges. I am not gonna waste a whole lot of time. The Eastwood address is an address associated with Mr. Anderson. His wife apparently lives there. The police tell us he is coming out of that residence. There are bills there in his name. There is clothing

there that they say is Mr. Anderson's. I think that
you can deal with that as you should.

My issue, and we take great exception, is with
the murder charge. Whether you believe that the
murder was premeditated or second-degree
murder, what is at the heart of the matter is whether
Mr. Anderson knew what was going to happen.
Whether Mr. Anderson assisted with the intent of
the killing knowing the intent of the shooter.

That is what aiding and abetting requires, is
that there be proof beyond a reasonable doubt that
he intentionally assisted before or during the killing
of [J.P.] And that he intended the killing or that he
knew that the shooter intended the killing himself.

* * *

But on this day, you hold Mr. Anderson's fate
in your hand. You're the finders of the facts. You're
the judges of the facts. We ask that you do justice
and justice demands in this case that certainly as to
the murder charges, there is no proof beyond a
reasonable doubt of his knowledge, of his intent that
there be a killing or a shooting at that home, or that
he had knowledge before the crime that that was
going to be committed, or that he provided a
weapon for that to be done, it just does not exist on
this record. And so we ask you to do justice again.

In response, the prosecutor argued during rebuttal:

Mr. Anderson, oh he intended for Mr. Mosby
to do what he did. He intended to give him that rifle
to shoot up that house. This wasn't a scare tactic.
He had a choice between guns. He also had several
choices to make, and he made the wrong one every
time. But again, it matters what Mr. Mosby intended.
What did Mr. Mosby intend? And for [sic] penny, in

for a pound, Mr. Anderson helps him, he's just as
guilty.

"Prosecutorial comments must be read as a whole and
evaluated in light of defense arguments and the relationship
they bear to the evidence admitted at trial." *People v. Brown*,
279 Mich. App. 116, 135 (2008). It is clear that the prosecutor
was responding to Anderson's argument that lack of knowledge
absolved him of any wrong-doing. Pointing to the evidence in
the record, the prosecutor mapped out Anderson's knowledge.
She did not argue that lack of knowledge was irrelevant; rather,
she argued that the evidence clearly supported a finding that
Anderson acted purposefully and with full knowledge of the
natural and probable consequences of his conduct.

Additionally, the trial court properly instructed the jury on
the law of aiding and abetting and further instructed the jury:
"The lawyers' statements and arguments and any commentary
are not evidence. They are only meant to help you understand
the evidence in each side's legal theories. You should only
accept things the lawyers say that are supported by the
evidence or by your own common [ ] sense and general
knowledge." Therefore, even if anything that the prosecutor
said could be construed as a misstatement of law, the jury was
correctly instructed.

*Anderson*, 2016 WL 6667951, at *5-8.

A prosecutor's misconduct violates a criminal defendant's

constitutional rights if it "'so infected the trial with unfairness as to make the

resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477

U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643

(1974)). Prosecutorial misconduct entails much more than conduct that is

"undesirable or even universally condemned." *Id*. at 181 (internal quotation

omitted). To constitute a due process violation, the conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)(alteration in original). "That leeway increases in assessing a state court's ruling under AEDPA," because the court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017)(quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

The Michigan Court of Appeals reasonably rejected the claim. The prosecutor suggested during closing argument that Anderson knew of Mosley's intent to murder Cochran and/or her son, but in the alternative, she asserted that if they chose to give Anderson "the benefit of the doubt," he nevertheless at least knew that murder was a natural and probable consequence of giving someone an assault rifle to shoot up a house. In response, defense counsel ignored this alternative mental state for aiding

and abetting and asserted that because there was no evidence that

Anderson knew Mosley was going to commit murder, the jury must acquit

him. It was in reply to this argument that the prosecutor used the phrase "in

for a penny, in for a pound," to suggest that it did not matter if Anderson

knew Mosely intended to commit murder. While the prosecutor in her reply

did not explicitly mention the natural-and-probable-consequences

alternative, in the context of the exchange, it was clear she was responding

to defense counsel's failure to address that alternative.

Moreover, the trial court's proper instruction on the elements of aiding

an abetting rendered any alleged omissions or imprecision by the

prosecutor concerning the required mental state harmless. *See United

States v. Deitz*, 577 F. 3d 672, 696-97 (6th Cir. 2009). In light of the record

and the very general standard governing claims of prosecutorial

misconduct, the state court adjudication of this claim was reasonable.

With respect eliciting sympathy for the victim, the Court of Appeals

rejected the claim on the merits as follows:

> Anderson next argues that the prosecutor improperly
> appealed to the jury's sympathy when she asked for justice for
> [J.P.] in the following instances:
>
> > I'm gonna have one more chance to address
> > the Mosby jury in this case, when I do, I'm gonna
> > ask for justice—for justice for [J.P.]. No child should
> > be unsafe sleeping in their own bed. What Mr.

Mosby did, it was deliberate, it was intentional. He killed that little boy. He did it on purpose. I'm gonna ask you to find him guilty when you return.

* * *

Under the cover of darkness, kill a woman and her child. I'm gonna have another chance to address you all, so when I do, I'm gonna ask for justice for [J.P.] and I'm gonna ask that you return a verdict guilty on all counts.

* * *

What happen[ed] to [J.P.], shouldn't happen. No child should be sleeping in their bed, minding their own business and murdered in their sleep. Ms. Cochran didn't deserve this. [J.P.] didn't deserve this.

* * *

There are no do-overs with a trial. This is it [J.P.], he gets justice from me, from you, or does he get it? I'm gonna ask you to go back and do the work, and that you return a verdict of guilty on all counts.

"The prosecutor may not inject issues into a trial that are broader than the defendant's guilt or innocence. The prosecutor commits misconduct when he or she invites jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty." *People v. Lane*, 308 Mich. App. 38, 66 (2014). "A prosecutor may not appeal to the jury to sympathize with the victim. Nor may a prosecutor urge the jury to convict as part of its civic duty or on the basis of its prejudices." *Unger*, 278 Mich. App. at 237. The issue is whether the prosecutor's comments deflected the jury's attention from the evidence of the case. *Id.* The prosecutor was not asking the jury to convict Anderson so that someone could be held accountable for his death and the family could have a measure of justice; instead, the prosecutor clearly argued that, in light of all the evidence presented at trial, Anderson was guilty and his conviction would be just. *Anderson*, 2016 WL 6667951 at *8.

*Anderson*, 2018 WL 4165246, at *6-8 (footnotes omitted).

This decision was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court law. It is well settled that a prosecutor may not make remarks "calculated to incite the passions and prejudice of the jurors," *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991), or to encourage them to decide a case based upon their feelings instead of the evidence. *Johnson v. Bell*, 525 F.3d 488, 484 (6th Cir. 2008).

Here, it was reasonable for the Michigan Court of Appeals to find that the remarks did not rise to the level of comments designed to incite prejudice in the jury. *See Puertas v. Overton*, 168 F. App'x. 689, 701 (6th Cir. 2006). The prosecutor's comment about seeking justice for the young victim and that he and his mother did not deserve what happened to them could reasonably be viewed to be connected to the prosecutor's main theme that the evidence presented at trial proved Anderson's guilt and that justice, therefore, demanded a guilty verdict. The complained-of parts of the argument were a minor aspect of an otherwise proper argument. At a minimum, "fairminded jurists could disagree" whether the remarks crossed the line, and as such, this court must defer to the state court decision. *Harrington*, 562 U.S. at 101.

23

Anderson fails to demonstrate entitlement to relief based on his second claim.

C

Anderson's third and fourth claims raise several allegations of ineffective assistance of trial and appellate counsel. A few of the allegations were raised on direct review and rejected on the merits by the Court of Appeals, and the remaining allegations were raised in Anderson's motion for relief from judgment and rejected on the merits by the trial court. The court will address the allegations separately.

1.

Anderson first argues that his trial counsel failed to move to strike Sargent Mackie's direct examination testimony when Mackie testified that he did not recall everything Anderson said during his police interview after Mackie failed to watch the videotape of the interview, thus depriving Anderson of the opportunity to cross-examine Mackie about the interview. The Court of Appeals considered and rejected the claim on the merits on direct appeal:

> Sergeant Samuel Mackie interviewed Anderson for six hours. Although the interview was videotaped, the video was not played for the jury because of the references to Anderson's parolee status at the time of the crime. At trial, Mackie testified that defendant denied knowing anyone associated with the case. On cross-examination, Mackie admitted that he could not

24

recall everything and said that he was under the impression
that the videotape would be played for the jury. The trial court
asked, but did not order, Mackie to review the tape and resume
his testimony the following day.

Contrary to Anderson's contention on appeal, Mackie did,
in fact, view the video. When trial began the following day,
defense counsel asked:

Q. Sergeant Mackie, on yesterday the judge asked
you to review the videotape of the interview. Did you
do that?

A. I did.

Defense counsel only asked a few questions. The trial
court later noted its dismay: "We sent the jury home, we
brought this witness back today only to have you ask him three
questions, which I mean it was really much to do [sic] about
nothing." There was, therefore, no basis for counsel to ask that
Mackie's testimony be stricken. "Counsel is not required to
raise meritless or futile objections." *People v. Eisen*, 296 Mich.
App. 326, 329 (2012).

*Anderson*, 2016 WL 6667951, at *11-12.

The Sixth Amendment to the United States Constitution guarantees a

criminal defendant the right to the effective assistance of counsel. In

*Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme

Court set forth a two-prong test for determining whether a habeas petitioner

has received the ineffective assistance of trial counsel. First, a petitioner

must prove that counsel's performance was deficient. This requires a

showing that counsel made errors so serious that he or she was not

functioning as counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair proceeding. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. A reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the

[proceeding] cannot be relied on as having produced a just result."
*Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

The state court did not unreasonably apply this standard to Anderson's first allegation of ineffective assistance of counsel because the record undermines the factual basis for the claim.

Sgt. Mackie testified on direct examination about taking a lengthy statement from Anderson. Tr. 4-20-15, at 115-121. He indicated that the interview was videotaped. *Id.* at 122. On cross-examination, Mackie answered a number of questions about the statement, but he testified that he could not recall whether Anderson made a certain response to one of

the questions. When pressed by defense counsel, "Have you had an opportunity to review the video before coming to testify?" Mackie answered, "No, I was under the impression that it was just getting played to the jury, and I was [not] gonna be asked all these questions." *Id*. at 123-25.

The jury was then excused, and after an extended discussion, the court asked Mackie to watch the videotape so he could answer defense counsel's questions. *Id.* at 125-129. The court adjourned for the day with cross-examination to resume the following morning. When trial resumed, defense counsel asked Mackie if he had reviewed the videotape as asked, and Mackie answered, "I did." Tr. 4-21-15, at 6. Defense counsel then asked only a few more questions of Mackie. *Id.* at 6-7. This prompted the frustrated response from the trial court about time having been wasted by defense counsel where it turned out he did not have much more to ask Mackie about the interview.

Contrary to Anderson's allegation, his counsel was not prevented from questioning Mackie about the interview. While Mackie had not reviewed the video on the first day of cross-examination, at the direction of the court he watched it the evening before his second day of testimony. It was defense counsel who then chose to limit questioning on the second day. Nothing in the record, therefore, suggests a basis for moving to strike

28

Mackie's direct examination testimony. The record reasonably supports the decision of the state court.

2.

Anderson next asserts that his trial counsel failed to object to the presentation of evidence that Sparks' family members were threatened. The Michigan Court of Appeals likewise rejected this claim on the merits on direct appeal:

> Anderson next argues that defense counsel was ineffective for failing to object to testimony regarding threats to Starks's family. Starks's mother and brother both received threats and his mother was ultimately relocated. Starks believed these threats came from "Titi," who was Anderson's passenger on the night of the shooting. Evidence of threats against a witness must be linked to the defendant if the evidence is offered to show the defendant's consciousness of guilt. *People v. Sholl*, 453 Mich. 730, 740 (1996). A jury could infer that Titi was a passenger in Anderson's car when the shooting occurred and was acting on Anderson's behalf when the alleged threats were made. Evidence that a witness was threatened by someone other than the defendant is also admissible for its relevance to the witness's credibility to explain a reluctance to testify, or to explain prior inconsistent statements of the witness. *People v. Johnson*, 174 Mich. App. 108, 112 (1989); *People v. Clark*, 124 Mich. App. 410, 412-413 (1983). Even if Anderson's attorney should have objected, Anderson fails to show prejudice in light of the overwhelming evidence against Anderson.

*Anderson*, 2016 WL 6667951, at *12.

The claim was reasonably decided. First, the state court found the evidence of the threats was admissible because "Titi" was someone the

evidence indicated was connected to Anderson as being a passenger in Anderson's vehicle at the time of the offense. Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). The state court determination that the evidence was admissible under Michigan law must be deferred to here in resolving petitioner's ineffective assistance of trial counsel claim. *See Brooks v. Anderson*, 292 F. App'x 431, 437-38 (6th Cir. 2008). Because this Court cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law, the Court must reject the allegation. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005).

Moreover, the state court reasonable found that Anderson could not demonstrate prejudice. No suggestion was made at trial by either the witnesses or the prosecutor that Anderson had anything to do with the threats. A police officer testified that he was never able to identify the person making the threats. Tr. 4-21-15, at 91-92. In the absence of an argument or inference that Anderson threatened the witnesses or that they were threatened at his direction, Anderson cannot show that his counsel's

failure to object resulted in *Strickland* prejudice. The state court reasonably rejected the allegation.

3.

Anderson asserts in his third and fourth allegations that his counsel was ineffective for failing to object to the misconduct of the prosecutor referred to above. Because those claims are without merit, counsel was not ineffective for failing to raise objections to the comments. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013)("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.")

4.

Anderson first presented the state courts with his next allegation of ineffective assistance on post-conviction review. Anderson argues that his counsel was ineffective for failing to investigate and call "Titi" as a defense witness, who for the first time in court proceedings he revealed to be someone named Ronald Sutton.[2] Besides erroneously invoking res judicata as grounds for rejecting the claim, the trial court also found that the claim was without merit:

---

[2]It is not clear that Anderson is raising his failure to call a defense cell-phone expert claim in this action. If he is, he cannot demonstrate entitlement to relief because he never proffered the state court nor this court with any evidence of a defense expert's proposed testimony. *Burt v. Titlow*, 571 U. S. 12, 23 (2013); *Dunn v. Reeves*, 141 S. Ct. 2405, 2407 (2021).

The court is further unconvinced that the lack of testimony from Ronald Sutton or an expert witness would have in any way impacted the outcome of trial and finds no error in trial counsel[']s decision not to pursue the testimony of either. Defendant has not shown there is a reasonable probability that had counsel presented the testimony of Ronald Sutton or an expert witness, the outcome would have been different.

(ECF No. 18-15, PageID.2288.)

The claim was then presented to the Court of Appeals, which found

that the trial court correctly rejected Anderson's claims on the merits:

[N]otwithstanding the fact that the trial court again erroneously held that res judicata precluded relief in this case, the trial court addressed the merits of defendant's claims and concluded that defendant had not established entitlement to relief. Defendant has not established that, in evaluating the merits of his claims, the trial court erred in denying the motion for relief from judgment.

(ECF No. 18-20, PageID.2647.)

The determination that Anderson failed to demonstrate *Strickland*

prejudice was not objectively unreasonable. Anderson submitted an

affidavit to the trial court from Ronald Sutton, referred to at trial as "Titi,"

which was executed on Jul 23, 2018, several years after trial. Sutton states

that he was with Anderson on the night of the shooting. Sutton says that he

saw Anderson with Mosby and Starks, but contrary to Starks' testimony,

Anderson purchased an assault rifle from Mosby, and then he was with

them when Anderson purchased ammunition at a gas station. Sutton did

not see Anderson give a weapon and hoodie to Mosby, and Anderson never agreed to wait for Mosby and Starks and drive them from the scene of a shooting. Sutton says he was never contacted by Anderson's attorney and was willing to testify to his account at trial. (ECF No. 13, PageID.179.) Anderson also submitted his own affidavit stating that he informed his counsel about Sutton, but his counsel never contacted Sutton. (ECF No. 12, PageID.147.)[3]

Neither the state trial court nor the court of appeals explained the rationale for their decision that the claim was without merit. In such circumstances, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... *could have supported*, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Harrington*, 562 U.S. at 101 (emphasis added).

There are arguments or theories for which there would be fairminded disagreement whether the state court decisions are consistent with

---

[3]Anderson filed a motion in this action for the Court to consider his and Sutton's affidavits. (ECF No. 12.) Because the affidavits were submitted to the state court and apparently accepted by them, they will also be considered here as part of the record in determining whether the state court adjudication was reasonable.

*Strickland*. First, whereas Sutton's affidavit contains a brief exculpatory account, the evidence presented at trial against Anderson was quite strong and is difficult to square with Sutton's version of events.

Mosby was vocal about his intentions to kill everyone in Cochran's house to several witnesses. Text messages between Mosby and Anderson strongly suggest that Anderson was aware of Mosby's anger and what he threatened to do. This occurred earlier in the day before Sutton claims Mosby sold Anderson the rifle and went with him to purchase ammunition. This odd sequencing proposed by Sutton's affidavit is unexplained and difficult to reconcile with Mosby having already shot up Cochran's residence. Because the rifle found at Anderson's residence was the one used in the murder, Anderson must now be claiming through Sutton's affidavit that he purchased the rifle after the shooting.

But if Sutton is to be believed, Anderson would have known either immediately after the shooting or sometime later that Mosby had tricked him into buying a murder weapon and the same type of ammunition used during the shooting. Yet Anderson failed to raise that claim with police during his lengthy interview. In fact, after initially denying that he knew Mosby at all, Anderson told police that if the assault rifle and ammunition found at his residence were used in the murder, that Mosby must have

snuck in and put them there. Tr. 4-20-2015, at 136-37. This is far different from Sutton's claim that Mosby sold Anderson a rifle at or near the scene of the shooting, an account that nevertheless placed Anderson at the location and time of the murder. In other words, Sutton's brief account does not even square with what Anderson told police. Nor would have it been easy for Anderson to reconcile a claim that he purchased a murder weapon with the timing and contents of the text messages between himself and Mosby. In light of the record evidence, there could at least be fairminded disagreement between reasonable jurists whether the content of Sutton's affidavit demonstrates *Strickland* prejudice.

It is also noteworthy that Sutton did not execute the affidavit until 2018, several years after trial. Though Sutton says defense counsel never contacted him, he does not explain why he failed to call counsel, or why he failed to go police upon hearing that Anderson had been sold a murder weapon and was falsely accused of murder. Certainly, police investigators were keen on locating and interviewing "Titi" prior to trial as one of the people who was with Mosby, Anderson, and Starks when the weapon was exchanged. But officers were unable to identify "Titi" as Sutton. Tr. 4-21-2015, at 93-94. Sutton does not explain why he sat on what Anderson claims is exonerating information before trial, during trial, and then for years

afterwards. Long-delayed affidavits like these which seek to exonerate a habeas petitioner are "treated with a fair degree of skepticism." *Herrera v. Collins*, 506 U.S. 390, 423 (1993). Indeed, claims "based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Id.* at 417.

The court concludes that fairminded jurists could disagree on how to resolve this claim under *Strickland*. Accordingly, Anderson fails to demonstrate entitlement to relief.

5.

Anderson asserts that his counsel was ineffective for failing to object to the trial court's one-word answer to a jury note. The trial court found that the record suggested that defense counsel did not object to the answer as a matter of strategy:

> Defendant has failed to establish that there was a clear error in the answer to the jury question provided by this Court. As the transcript reflects the answer provided to the jury at issue in this motion was drafted by stipulation of both the Prosecution and the Defense.

> THE COURT: I've received a note from the jury, and this note came about thirty minutes ago. And it says, are we basing our aiding and abetting decision on Anderson on what we believe Mosby is guilty of? I found this question to be quite perplexing. [B]ut the attorneys did not, and they

36

propose that I send them back a note that simply says, y-e-s, yes. That's what you all want me to do?

MS. POWELL-HOROWITZ: Yes, because –

THE COURT: All right.

MS. PETERSON: Your Honor, could the Court share with me your perplexity?

THE COURT: I mean, what else could they think they're here for?

MS. PETERSON: Oh, okay.

THE COURT: I mean it's like. It's like for them to send a note like this causes me to question, if they understand what they've been doing here for the past three weeks.

MS. PETERSON: Okay.

THE COURT: I mean, it's been very clear that the prosecution's theory of this case is that Mr. Anderson aided and abetted Mr. Mosby, who actually did a shooting. So, I mean I don't understand. I mean this question is like asking are we supposed to be deciding if water is wet.

MS. PETERSON: Gotcha. Okay.

THE COURT: That's all.

MS. PETERSON: Very well, yes.

THE COURT: So, I will simply send them a note that says, yes.

MS. PETERSON: Thank you.

The transcript reflects that the Court went on the record with the question presented by the jury and the proposed answer by trial counsel thirty minutes after the note was received from the jury. This indicates that both the Prosecution and the Defense were given an opportunity to discuss the jury question and given an opportunity to discuss the jury question and come to their own decision about how to best answer the inquiry of the jurors. Trial counsel for the Defendant, Angela Peterson, did not fail to object to the answer provided by the jury because she in fact played a direct role in drafting the response. Her decision to answer the jurors['] question with only one word yes appears to have been a matter of her trial strategy. As such Defendant as failed to meet the burden to overcome the presumption that defense counsel's actions were based on sound trial strategy.

(ECF No. 18-15, PageID.2288.)

This decision was reasonable. The question by the jury was terse and open to interpretation. The attorneys apparently interpreted it to simply ask whether the aiding-and-abetting charge against Anderson had to relate to Mosby's crime, to which the trial court expressed some exasperation and agreed with the attorneys' proposed one-word answer, "yes." Anderson suggests that the question could also be read more broadly, and the jury was asking whether it could find Anderson guilty solely because they believed Mosby was guilty.

The jury, however, had already been properly instructed on all the elements of aiding and abetting. Tr. 4-22-2015, at 141-42. By confirming the obvious point that the aiding and abetting charge related to Mosby's

crime, defense avoided – perhaps as a matter of strategy – another instruction that the mens rea for aiding and abetting is satisfied by a mere finding that murder was a natural and probable consequence of the aid Anderson provided to Mosby.

*Strickland* directs reviewing courts to presume that counsel made reasonable strategic decisions. The record shows that neither attorney was perplexed by the note, and they jointly requested the simply affirmative answer. While a more cautious attorney might prefer a detailed answer that ensured the jury correctly understood the mens rea requirements for aiding and abetting, counsel's strategy of avoiding a second reading of the instructions "need not be particularly intelligent or even one most lawyers would adopt." *Cone v. Bell*, 243 F.3d 961, 978 (6th Cir. 2001), rev'd on other grounds, 535 U.S. 685 (2002). "Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000). The rejection of this claim by the trial court was not unreasonable.

6.

Anderson next asserts that his trial counsel failed to move to sever his trial from Mosby's. The trial court rejected the claim on the merits:

Additionally, Defendant's argument that trial counsel was ineffective for failure to sever his trial from that of the Codefendant is wholly without merit. In this case the Prosecution filed a motion to consolidate citing judicial economy. After hearing from the parties on the matter, including objections raised by the defense, the Court granted the motion to consolidate but provided each Defendant his own jury. The jurors were kept separate at all times when court as not in session and when appropriate during trial, the Defendant's jury was excused to avoid exposure to any arguments and or evidence that was limitedly admissibly only for the Codefendant. Accordingly, trial counsel cannot be said to be ineffective for objections that were in fact raised. Additionally as Defendant fails to satisfy the prejudice component, the court will not consider whether Defendant would satisfy the performance component of his ineffectiveness claim. *See Strickland*, 466 U.S. at 697 (stating court need not address both components of ineffectiveness claim if defendant makes an insufficient showing of one).

(ECF No. 18-15, PageID.2289.)

This decision was reasonable. Though Anderson was tried jointly with Mosby, the two defendants had separate juries. Furthermore, Anderson's jury was not present in the courtroom to hear the evidence that was admitted only against Mosby. The state court therefore reasonably determined that Anderson failed to demonstrate a reasonably probability of a more favorable result had he been tried separately from Mosby.

7.

Anderson asserts that his appellate counsel was ineffective for failing to raise his post-conviction ineffective assistance of counsel claims on

direct review. The failure to raise an issue on appeal can only be ineffective "if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). Because the state court addressed and found his post-conviction claims to be without merit, Anderson fails to demonstrate that he was prejudiced by the failure of his appellate counsel to raise the claims earlier.

8.

Finally, Anderson asserts that his appellate counsel was ineffective for failing to seek an evidentiary hearing during his direct appeal for the three allegations of ineffective assistance of trial counsel presented in that proceeding.

Appellate counsel, in fact, filed a motion for an evidentiary hearing. (ECF No. 18-18, PageID.2347-53.) Even assuming that appellate counsel was ineffective for failing to better assert entitlement to a hearing, Anderson was not prejudiced because for the reasons stated above, he fails to show that the underlying ineffective assistance of trial counsel claim have merit. Anderson is therefore unable to establish that he was prejudiced by appellate counsel's failure to obtain a hearing. *See, e.g., Davis v. Booker*,

594 F. Supp. 2d 802, 831 (E.D. Mich. 2009); rev'd on other grds, 589 F. 3d 302 (6th Cir. 2009).

The Court notes that Anderson requests a hearing here because he was unable to obtain one in state court. (ECF No. 19.) But as explained, all of Anderson's claims were reasonably adjudicated in the state courts, satisfying the limited standard or review set forth in § 2254(d)(1). Because Anderson has not overcome the hurdle created by § 2254(d)(1), the court is prohibited from considering evidence that is not already part of the state court record. *See Cullen v. Pinholster*, 563 U.S. 170, 181-182 (2011).

As none of Anderson's claims merit habeas relief, the petition will be denied.

IV.

In order to appeal the court's decision, Anderson must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the court's conclusion that Anderson has failed to demonstrate entitlement to habeas relief with respect to his claims because they are devoid of merit.

Anderson is denied permission to appeal in forma pauperis because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

V.

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the amended petition for a writ of habeas corpus, 2) **DENIES** the motion for an evidentiary hearing, 3) **DENIES** a certificate of appealability, and 4) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: June 27, 2023

s/George Caram Steeh<br>GEORGE CARAM STEEH<br>UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 27, 2023, by electronic and/or ordinary mail and also on Ty-Ron Steven Anderson #405128, Kinross Correctional Facility, 4533 W. Industrial Park Drive, Kincheloe, MI 49786.

s/Mike Lang
Deputy Clerk
